IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT L. STEIN,<br><br>    Plaintiff,<br><br> v.<br><br>LEE EYE CENTER, INC., and TAC LEE,<br><br>    Defendants. | 2:21-CV-01730-CCW-LPL |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Dr. Robert Stein's Motion for Temporary Restraining Order and Preliminary Injunction. *See* ECF No. 3. In his Motion, Dr. Stein seeks, pursuant to Federal Rule of Civil Procedure 65,[1] a Temporary Restraining Order and/or Preliminary Injunction that would bar Defendants Lee Eye Center, Inc., and Dr. Tac Lee from attempting to enforce, through legal action or otherwise, certain Covenants Not to Compete ("Covenants") that are part of the 2020 Asset Purchase Agreement and the 2020 Employment Agreement between Defendants and Dr. Stein. *Id.*

The Court has reviewed Dr. Stein's Motion, Memorandum of Law, and supporting declarations. Furthermore, on December 3, 2021, Defendants submitted a Response in Opposition along with a supporting affidavit. Also on December 3, 2021, the Court held a telephonic conference, at which all parties were represented by counsel, and during which the Court heard oral argument on the merits of Dr. Stein's Motion.

---

[1] Dr. Stein initially sought a TRO without "further notice to Defendants" pursuant to Rule 65(b). Because Dr. Stein had already provided notice of his Motion to Defendants, the Court determined that it would not resolve Dr. Stein's Motion on an *ex parte* basis and so scheduled a teleconference with the parties for December 3, 2021.

Having considered Dr. Stein's Motion, the supporting and opposing briefs, accompanying declarations, and the arguments made by counsel, the Court finds that Dr. Stein has met the standard for obtaining a TRO. The Court will, therefore, enter a TRO and defer ruling on the Motion for Preliminary Injunction until after the Court holds a hearing on Dr. Stein's request for a preliminary injunction.

**I. Background**

Dr. Stein is an ophthalmologist who built a successful practice in the Mercer county, Pennsylvania area over the last 25 years. ECF No. 1 ¶ 17. Dr. Stein maintained offices in Hermitage and Greenville, Pennsylvania. *Id.* ¶ 18. In August 2020, Dr. Stein and Defendants entered into an Asset Purchase Agreement and Employment Agreement, according to which Dr. Stein sold his practice to Defendants and was to continue on as an employee of Defendants. Under the Employment Agreement, Dr. Stein was to work for Defendants for at least an initial period of two years, during which time he could only be terminated for cause (as defined in the Employment Agreement). *Id.* ¶¶ 42–48. Additionally, the Asset Purchase Agreement and the Employment Agreement each contain a Covenant Not to Compete which would prohibit Dr. Stein from practicing medicine within a 20-mile radius of the Hermitage and Greenville offices. *Id.* ¶¶ 46, 51. According to Dr. Stein, the parties' relationship began to break down shortly after the Asset Purchase Agreement and Employment Agreement went into effect. *Id.* ¶ 60. On October 21, 2021, Defendants terminated Dr. Stein's employment. *Id.* ¶ 70. Dr. Stein alleges that the termination was without cause. *Id.* ¶ 71.

Additionally, the declarations filed by Dr. Stein in support of his Motion state that: (1) Dr. Stein is one of, at most, only a handful of ophthalmologists practicing in and around the Mercer county area; (2) that Dr. Lee only visits Mercer county every other week to perform procedures—

otherwise, patients must travel to his Ohio offices;  (3) Dr. Stein is the only ophthalmologists with privileges at three hospitals in Mercer county—UPMC Horizon-Greenville, UPMC Horizon-Farrell, and Steward Sharon Regional;  and (4) prior to his termination, Dr. Stein was the only ophthalmologist who provided "emergency care" (which includes "emergent care that does not require surgery but does require immediate attention") in Mercer county.  *See* ECF No. 6 (Declaration of Dr. Richard Stigliano, D.O.);  ECF No. 7 (Declaration of Dr. Deborah Ann Snyder, D.O.);  and ECF No. 17 (Declaration of Dr. Robert Stein, D.O.).  Defendants' supporting declaration contends that Dr. Stein did not provide any emergency care during the time he was employed by Lee Eye Center and that there are "at least two other eye practices within Mercer County with ophthalmologists on staff;"  however, this fact is disputed by Dr. Stein.  *Compare* ECF No. 15 (Declaration of Kim Horne) *with* ECF No. 17 (Declaration of Dr. Stein).

## II. Standard of Review

The primary purpose of a temporary restraining order and/or preliminary injunction is to preserve the status quo until a decision can be made on the merits.  *See Hope v. Warden York County Prison*, 956 F.3d 156, 160 (3d Cir. 2020) (*Hope I*).  The requirements for a temporary restraining order are the same as those for a preliminary injunction.  *See Hope v. Warden York Cty. Prison*, 972 F.3d 310, 319 (3d Cir. 2020) (*Hope II*).

A party seeking a TRO must establish (1) a likelihood of success on the merits, (2) that denial of injunctive relief will likely result in irreparable harm, (3) that granting the temporary restraining order will not result in irreparable harm to the defendants, and (4) that granting the TRO is in the public interest.  *See id.* at 319–20 (citations omitted).  The United States Court of Appeals has instructed that the first two factors—likelihood of success and irreparable harm—are "gateway" issues that the party seeking injunctive relief must establish;  only after the moving

party has met this burden may the court consider the third and fourth factors and "determine[] in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *See Reilly v. City of Harrisburg,* 858 F.3d 173, 179 (3d Cir. 2017) (citations omitted).

To establish a reasonable probability of success on the merits such that a TRO should issue, a "plaintiff need only prove a prima facie case, not a certainty that [it] will win." *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 173 (3d Cir. 2001); *see also Reilly v. City of Harrisburg,* 858 F.3d 173, 179 (3d Cir. 2017) (noting that the movant must "demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not)."); 42 Am. Jur. 2d Injunctions § 18 (2020) (explaining that to obtain a preliminary injunction, the movant must show that it is "reasonably likely" to succeed on the merits.). That is, "the moving party must produce sufficient evidence to satisfy the essential elements of the underlying cause of action." *Sutton v. Cerullo*, Civil No. 3:CV-10-1899, 2014 U.S. Dist. LEXIS 110116, at * 13 (M.D. Pa. Aug. 8, 2014) (citing *Punnett v. Carter*, 621 F.2d 578, 582–83 (3d Cir. 1980)). And, "'the burdens at the preliminary injunctions stage track the burdens at trial.'" *Greater Phila. Chamber of Commerce v. City of Phila.*, 949 F.3d 116, 133 (3d Cir. 2020) (quoting *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006)).

Next, to establish irreparable harm, the movant must show "that it is more likely than not to suffer irreparable harm in the absence of preliminary relief." *Reilly*, 858 F.3d at 179. To do so, the movant "must demonstrate a potential harm which cannot be redressed by a legal or an equitable remedy following a trial." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989). Furthermore, the threatened injury must be imminent; that is, "the injury cannot be remote or speculative; it must be poised to occur before the District Court can hold a

trial on the merits." *Par Pharm., Inc. v. Quva Pharm, Inc.*, 746 Fed.Appx. 273, 279 (3d Cir. 2019) (citing *BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 263-64 (3d Cir. 2000)). Finally, while it is true that "[i]n the absence of exceptional circumstances, economic loss does not qualify as irreparable harm," *Hadeed v. Advanced Vascular Res. of Johnstown, LLC*, Case No. 3:15-cv-22, 2016 U.S. Dist. LEXIS 169709 at *7 (W.D. Pa. Dec. 8, 2016) (Gibson, J.) (citing *Minard Run Oil Co. v. U.S. Forest Serv.*, 670 F.3d 236, 255 (3d Cir. 2011), courts in this Circuit have recognized that "'[t]he loss of business and good will, and the threatened loss of the enterprise itself, constitute irreparable injury to the plaintiff sufficient to justify the issuance of a preliminary injunction.'" *Beilowitz v. GMC*, 233 F. Supp. 2d 631 (D.N.J. 2002) (quoting *Carlo C. Gelardi Corp. v. Miller Brewing Co.*, 421 F. Supp. 233, 236 (D.N.J. 1976); *see also Pappan Enters. v. Hardee's Food Sys.*, 143 F.3d 800, 805 (3d Cir. 1998) ("Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill.") (citation omitted).

**III. Discussion**

    **A. Likelihood of Success on the Merits**

The Court concludes that Dr. Stein has met his burden to show a reasonable probability of success on the merits such that a TRO should issue. As relevant here, in his Complaint, Dr. Stein seeks a declaratory judgment that the non-competes in the Asset Purchase Agreement and Employment Agreement are unenforceable. *See* ECF No. 1, ¶¶ 82–88.

First, the Court is persuaded (and Defendants do not contest) that Dr. Stein has Article III standing to pursue his claim for declaratory relief and that his claim is ripe. *See* ECF No. 4 at 4–7. Next, under Pennsylvania law, to determine whether a non-compete is enforceable, the court must weigh "the employer's protectible business interests against the interest of the employee in earning a living in his or her chosen profession, trade or occupation, and then balances the result

page

against the interest of the public." *Hess v. Gebhard & Co.,* 808 A.2d 912, 920 (Pa. 2002) (citation omitted). And, "[a]lthough the public interest is sometimes neglected in the balancing of employer and employee concerns…the interests of the public are of paramount importance in the context of non-competition covenants for physicians." *Wellspan* 869 A.2d at 999 (Pa. (citing *Hess*, 808 A.2d at 918).

Here, the parties dispute whether Defendants have a protectable business interest. C*ompare* ECF No. 4 at 10–12 *with* ECF No. 14 at 4.[2] However, even if Defendants do possess a protectible business interest, the Court concludes that Dr. Stein has carried his burden. Specifically, regarding the Covenant Not to Compete in the Employment Agreement, where an employer terminates an employee who is subject to a non-compete, Pennsylvania courts have said enforcement of such a restrictive covenant is unreasonable as a matter of law. *See Insulation Corp. of Am. v. Brobston,* 667 A.2d 729, 735 (Pa. Super. Ct. 1995) ("It is unreasonable as a matter of law to permit the employer to retain unfettered control over that which it has effectively discarded as worthless to its legitimate business interests."). Next, with regard to both Covenants Not to Compete, Dr. Stein's evidence tends to show that Mercer County (where Dr. Stein practices) has a shortage of ophthalmologists, and thus preventing Dr. Stein from practicing would impose substantial burdens and risks on the public, in the form of longer wait times for needed care, reduced patient choice, and higher medical costs. Accordingly, because a "plaintiff need only prove a prima facie case, not a certainty that he or she will win," *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 173 (3d Cir. 2001), the Court concludes that Dr. Stein has met his burden to show a likelihood of success on the merits.

---

[2] Citing *Wellspan Health v. Bayliss*, 869 A.2d 990 (Pa. Super. 2005), Defendants argue that "Lee Eye Center has a protactable interest in its goodwill and patient relationships." ECF No. 14 at 3.

## B. Irreparable Harm

Second, the Court finds that Dr. Stein has sufficiently shown he will suffer (or continue to suffer) immediate and irreparable harm absent injunctive relief. In addition to the imminent loss of his ownership interest in the Edgewood Surgical Center, *see* ECF No. 3-1, ¶ 3, Dr. Stein stands to suffer loss to his reputation, patient good will, and standing in the community—all of which he has worked to develop over 25 years of practicing medicine in Mercer county. *See* ECF No. 4 at 12–13. Thus, even if Defendants are correct that Dr. Stein's alleged losses are all compensable, the Court concludes on the present record, and only for purposes of resolving Dr. Stein's TRO request, that this case represents one of those "exceptional circumstances," *Hadeed*, 2016 U.S. Dist. LEXIS 169709 at *7, where the impending economic loss may not be wholly remediable with damages. *See Beilowitz v. GMC*, 233 F. Supp. 2d at 644 (quoting *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1205 (2d Cir. 1970) ("The right to continue a business in which [plaintiff] had engaged for twenty years … is not measurable in monetary terms.")).

## C. Balance of Harms

Third, the Court finds that the balance of harms weighs in favor of Dr. Stein. Defendants will not be harmed in any significant manner by the requested TRO. At this stage, Defendants would only be enjoined from attempting to enforce the Covenants Not to Compete until a hearing on Dr. Stein's Motion for Preliminary Injunction is held. While Dr. Stein's resumption of practice during that short time may have some negative effect on Defendants' business, based on counsel's representations during the December 3, 2021 telephonic status conference that many appointments and procedures are scheduled far in advance, the Court concludes any such harm will be slight. In contrast, if the Court were to refuse to grant Dr. Stein his requested TRO, he would suffer

substantial harm in the loss of his ownership interest in Edgewood Surgical Center and continued erosion of the good reputation he developed over 25 years of practicing medicine in Mercer County.

### D. Public Interest

Fourth, the grant of a TRO in this case is in the public interest. The public has a strong interest in having timely access to medical care of the sort provided by Dr. Stein. Indeed, taking Dr. Stein's evidence and Defendants' evidence together, it appears to the Court that Dr. Stein is one of at most a handful of ophthalmologists serving the Mercer county area. Thus, the Court concludes that it is in the public's interest to have Dr. Stein available to provide needed eye care to the residents of Mercer county.

Therefore, the Court finds that all four elements are satisfied and necessitate the grant of a TRO in favor of Dr. Stein.

## IV. Bond

Dr. Stein requests that the Court decline to require entry of bond. *See* ECF No. 3-2 ¶ 5. According to the Third Circuit, while "'the amount of the bond is left to the discretion of the court, the posting requirement is much less discretionary.'" *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 426 (3d Cir. 2010) (citation omitted). Thus, unless complying with the injunction raises no risk of monetary loss to the defendant, a court entering preliminary injunctive relief must require the plaintiff to post a bond. *See id.* Having considered the arguments presented by counsel at the telephonic status conference, the Court finds that a bond of $5,000 is sufficient to cover the costs and damages Defendants may sustain if they are found to have been wrongfully enjoined. *See* Fed. R. Civ. P. 65(c).

## V. Conclusion

The Court concludes Dr. Stein has established all of the requirements of Rule 65 and is entitled to entry of a TRO. An appropriate Order follows.

## ORDER

AND NOW, this 6th day of December, 2021, upon consideration of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, and having determined that:

(1) Plaintiff has established a likelihood of success on the merits;

(2) Plaintiff will suffer irreparable harm if the injunction is denied;

(3) granting the preliminary relief will not result in even greater harm to the Defendants; and

(4) the public interest favors relief,

IT IS HEREBY ORDERED that the Motion for Temporary Restraining Order is hereby GRANTED. IT IS FURTHER ORDERED that:

1) Defendants Lee Eye Center, Inc., and Dr. Tac Lee are temporarily enjoined, restrained, and prohibited from: (i) directly or indirectly, and whether alone or in concert with others, including anyone acting in concert or participation with Defendants, specifically including any agent, employee, officer, or representative of Defendants, attempting to enforce the restrictive Covenants Not to Compete in the Employee Employment and Asset Purchase Agreement; and (ii) filing legal action to enforce the restrictive Covenants Not to Compete in the Employee Employment and Asset Purchase Agreement. This specifically prohibits the Defendants from initiating any legal proceedings, including local, state, agency or federal proceedings, related to enforcement of the Covenants Not to Compete.

2)  A decision on Plaintiff's request for a Preliminary Injunction is hereby DEFERRED and a hearing on Plaintiff's request for preliminary injunction will be conducted on December 15, 2021 at 9:00 a.m.  All matters related to the preliminary injunction hearing such as the sequence and timing for the filing of witness lists (if any), exhibit lists, and joint stipulations (if any), will be set by further appropriate order.

3) Security Bond.  Plaintiffs shall post security (surety bond, cash, certified check, or attorney's check) in the amount of $5,000.  If security is cash, certified check, or attorney's check, the funds will be deposited into the Court's local Registry, where it will remain until further order by the Court; and,

4) This Order expires on **December 20, 2021 at 2:48 p.m.**, absent, for good cause shown, an extension by and at the discretion of the Court.

DATED this 6th day of December, 2021, at 2:48 p.m.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record